## THE MARY BUHNE.

(District Court, N. D. California. July 28, 1899.)

### No. 11,270.

1. COLLISION—WEIGHT OF EVIDENCE.

Where the positive testimony of two witnesses that an approaching vessel changed her course just prior to a collision is uncontradicted, a court is not authorized to reject it merely because no particular reason appears why such change of course should have been made.

**2. SAME—SAILING RULES—VESSELS CROSSING.**

A change of course by one of two approaching vessels after they come within view of each other, by which a danger of collision is first created, may make it the duty of the other vessel under the sailing rules to keep out of the way, though, had the original courses been maintained, she would have been entitled to the right of way.

This was a libel in rem for collision.

H. W. Hutton, for libelants.

Andros & Frank, for claimants.

DE HAVEN, District Judge. Libel by the owners of the schooner Jennie Thelin against the schooner Mary Buhne for damages alleged to have been sustained by the former in collision with the latter on the Pacific Ocean, at 12:30 o'clock on the morning of June 29, 1896. The testimony of the master of the Jennie Thelin was, in substance, as follows: Ten or fifteen minutes before the collision he first observed the green or starboard light of the Mary Buhne about two points on the starboard bow of the Jennie Thelin, and at a distance of about two miles. The night was moonlight and clear; the sea smooth, with a light wind from the southeast. The course of the Jennie Thelin at that time was S. by W., ½ W., and she was sailing as close to the wind as she could. The course of the Mary Buhne was about N. E., and she was running free, "maybe a couple of points in the sails free." In about four minutes he saw both lights of the Mary Buhne, the red and the green, and three or four minutes thereafter only her red or port light was visible. The vessels were then within 200 yards of each other, and both were sailing by the wind, the course of the Mary Buhne having been so far changed from what it was when first sighted that she was close-hauled, instead of running free. In order to avoid the collision, which seemed inevitable unless the course of one or the other vessel was changed, the helm of the Jennie Thelin was at this time put hard a-port. The Mary Buhne almost immediately thereafter changed her course so as to expose her green or starboard light to those on board the Jennie Thelin. In this position the vessels were crossing courses, and within two or three minutes after the helm of the Jennie Thelin had been ported the collision occurred, the Mary Buhne striking the port side of the Jennie Thelin.

1. Her mate and one seaman were on the deck of the Mary Buhne at and for some time before the collision, but neither of them was examined as a witness. The evidence is, perhaps, sufficient to show that the failure to procure the attendance of these persons as witnesses was not due to any lack of diligence upon the part of the owners of the Mary Buhne, nor because of any knowledge or belief upon their part that their evidence, if produced, would have been adverse to them. The case must therefore be determined solely upon the evidence before the court. unaided by any presumption as to what would have been the testimony of these absent persons if they had been examined as witnesses.

2. The testimony of the master of the Jennie Thelin in reference to the color of the light, as green or red, which the Mary Buhne ex-

posed to view from time to time, and as to what was done by the Jennie Thelin in order to avoid the collision, was fully corroborated by Jacobsen, one of the crew of the Jennie Thelin at that time. The only evidence which in any degree conflicts with this was that given by the master of the Mary Buhne. He was not on deck at the time of the collision, nor had he been for some time prior thereto. His testimony was to the effect that immediately after the collision he rushed upon the deck of his vessel, and the position of the sails of the Mary Buhne was then such as to indicate that she was running free at the time of the collision, and he further gave it as his opinion that she must have been so sailing for at least 10 minutes, because her sails could not have been changed by the two persons on watch from the condition of being closehauled to that in which he found them in less time than that. This opinion, based upon a hasty observation, made while the vessels were still in collision, is not sufficient, in my judgment, to overthrow the positive evidence of the two witnesses who testified, as above stated, that the Mary Buhne changed her course after her green light was first seen, and then resumed her original course two or three minutes before the collision; and, after giving careful consideration to the objections which have been urged against its credibility, I have reached the conclusion that the testimony of the master of the Jennie Thelin and that of his seaman Jacobsen must be accepted as true. It must be admitted that the evidence does not disclose any particular reason for the Mary Buhne's change of course, but the statement of the witnesses that there was in fact such change is not so improbable in itself as to warrant the court in rejecting it as untrue; nor was the testimony of the master of the Jennie Thelin upon this point materially weakened by the fact, brought out upon his cross-examination, that he directed the helm of his vessel to be put hard a-port, because he thought the sailing rules required vessels to port their helms when approaching each other end on, or nearly end on. This admission certainly shows that the master of the Jennie Thelin was ignorant of the sailing rules prescribed by law, but it does not show that he meant to modify his previous statement that at the time the helm of the Jennie Thelin was ported the course of the Mary Buhne had been so changed that only her red, or port, light was visible to him. The phrase "nearly end on" is very indefinite (The Nichols, 7 Wall. 664), and the witness was not questioned as to what he understood by it, nor as to what is the angle of their approach when vessels are properly described as approaching nearly end on. If he had been questioned in this direction, it is very probable he would have said that the Mary Buhne and Jennie Thelin, in the relative positions before described by him, with the red light of the former exposed to the latter, were approaching nearly end on.

3. The fact, then, having been established that the collision took place under the circumstances testified to by the master of the Jennie Thelin, which vessel was in fault? The following sailing rules were established by article 14 of the act of March 3, 1885 (23 Stat. 438):

"When two sailing ships are approaching one another so as to involve risk of collision, one of them shall keep out of the way of the other as follows, namely: (a) A ship which is running free shall keep out of the way of a ship which is close hauled. (b) A ship which is close hauled on the port tack shall keep out of the way of a ship which is close hauled on the starboard tack."

The argument has been very strongly pressed that, even conceding the testimony of her master to be true, the Jennie Thelin was in fault in changing her course when she did; the contention being that she should have maintained her course, and have left to the Mary Buhne the duty of keeping out of her way. This argument is based upon the assumption that the rule prescribed by subdivision a of article 14 of the sailing rules, just referred to, is the one that was applicable to the two vessels at all times after the green light of the Mary Buhne was first seen, the conceded fact being that she was sailing free when her light was first observed, and the Jennie Thelin was at the same time closehauled. The answer to this is that the vessels were not at that time approaching one another upon such lines as to involve risk of collision, because, if each vessel had continued in the course she was then sailing, they would have passed in safety. The rule contained in subdivision a of article 14 is only applicable when sailing vessels are approaching each other in such a way that there is danger of collision unless the course of one or the other is changed; and in that case it is made the duty of the vessel which is running free to change her course, or, in the language of the statute, she must keep out of the way of the vessel which is closehauled. According to the testimony of the master of the Jennie Thelin, it was not until after the Mary Buhne had changed her course, and was closehauled on the starboard tack, that there was any danger of collision; and as at that time the Jennie Thelin was closehauled on the port tack,—that is, closehauled with the wind on her port,—it became her duty, under subdivision b of article 14 of the sailing rules, before mentioned, to keep out of the way of the Mary Buhne. This is what the Jennie Thelin attempted to do when she ported her helm, and she would have succeeded if the Mary Buhne had continued upon the course upon which she was sailing at the time when the danger of collision first became apparent. It results from what has been said that there must be a finding that the collision was caused by the fault of the Mary Buhne, and the libelants are entitled to a decree for the recovery of the damages sustained by the Jennie Thelin, and for costs. The case will be referred to United States Commissioner Morse to ascertain and report the amount of such damages.